# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| WING C. CHAU, M.D., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-2305-B |
| | § | |
| AVIVA LIFE AND ANNUITY | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Request for the Court to Issue a Suggestion of Remand to the Judicial Panel of Multidistrict Litigation filed March 3, 2011 (doc. 69) and Defendant Aviva Life and Annuity Company's ("Aviva") Motion to Dismiss Plaintiffs' Second Amended Complaint filed February 5, 2010 (doc. 58). Having considered the Request and the Motion, the Court finds that Plaintiffs' Request for the Court to Issue a Suggestion of Remand should be and hereby is **DENIED WITHOUT PREJUDICE**. Further, Aviva's Motion to Dismiss should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims for common law fraud/negligent misrepresentation, Washington securities fraud, breach of duty of good faith, unjust enrichment, civil conspiracy, and violation of the Washington Consumer Protection Act against Aviva are hereby **DISMISSED WITHOUT PREJUDICE**. Aviva's Motion, to the extent it seeks dismissal of Plaintiffs' breach of contract claim, is **DENIED**.

# I.

## FACTUAL BACKGROUND[1]

Plaintiffs[2] in this lawsuit are physicians and dentists and their professional corporations, all of whom are citizens of the State of Washington. SAC ¶¶ 1-31. Plaintiffs allege that Indianapolis Life Insurance Company ("Indianapolis Life")[3] advertised, marketed, and consummated fraudulent business transactions, resulting in Plaintiffs' damages. *Id.* at ¶ 33. In the late 1990s, Indianapolis Life and Donald Guess created a "tax-sheltered investment to be offered to high-income professionals through a welfare benefit trust." *Id.* at ¶ 36. The trust, known as a "§ 419 Plan," because it was governed by Internal Revenue Code section 419, was designed to market an Indianapolis Life insurance policy as an investment "promising the investor a valuable benefit of tax-favored retirement funds from tax-free cash flow where the investor did not contract or participate in management decisions." *Id.* at ¶¶ 36-37. The policy had "artificially high initial surrender charges which suppressed the cash value of the policy for the initial period." *Id.* at ¶ 39. The investor would then purchase the policy at a discount from the trust, shortly before surrender charges were to be

---

[1] The background facts are derived from Plaintiffs' Second Amended Complaint ("SAC") filed September 14, 2009.

[2] Plaintiffs are Wing C. Chau, M.D.; Juliana Chau; Tri-Cities Physical Medicine & Rehabilitation, PC; Richard E. Ehlers, M.D.; Richard E. Ehlers, M.D., P.C.; Mark T. Chen, D.O.; Mark T. Chen D.O., P.C.; Craig Feeney, M.D.; Columbia Basin Imaging, P.C.; Henry H. Chou, M.D.; Henry H. Chou, M.D., P.C.; David R. Brown, D.D.S.; David R. Brown, D.D.S., P.L.L.C; David Russsell Brown, D.D.S., P.C.; William K. Trzcinksi, M.D.; William K. Trzcinski, M.D., P.S.; Donald G. Dicken, M.D.; Donald G. Dicken, M.D., P.C.; David L. Dickerman, M.D.; David L. Dickerman, L.L.C.; David L. Dickerman, PLLC; Walter J. Hales, M.D.; Walter J. Hales, M.D., P.S., Inc.; Patrick R. Harrison, D.D.S.; Patrick R. Harrison, D.D.S., P.C.; Steven J. Kincaid, M.D.; Steven J. Kincaid, M.D., P.C.; Douglas K. Murdock, D.P.M.; Douglas K. Murdock, D.P.M., PS; Charles Sung, M.D.; and Charles Sung, M.D., P.C..

[3] Defendant Aviva is the successor to Indianapolis Life through various business transactions. SAC ¶ 32. The Court refers to Indianapolis Life and Aviva interchangeably.

reduced and while the cash value of the policy was low, and then the value would "spring" to a higher level. The purchase could then borrow from his policy for tax-free cash flow. *Id.* However, Indianapolis Life knew that the IRS had looked askance at the legality of similar arrangements and indicated that these arrangements may be deemed abusive tax shelters, yet continued to market its § 419 Plan as a tax-avoidance plan. *Id.* at ¶¶ 40-41.

In 1998, Aaron Burns ("Burns"), an agent of Indianapolis Life, began marketing and selling Indianapolis Life policies to fund § 419 Plans in eastern Washington. *Id.* at ¶ 42. Burns proceeded to meet with the various Plaintiffs from 1998 through 2001 multiple times, and represented, both orally and in writing, that their payments to the trust would be tax-deductible, their investment earnings would be tax–free, and they would enjoy tax-free cash flow which could be used for retirement income.[4] *Id.* at ¶¶ 44, 46-59. In reliance on these representations, Plaintiffs initiated their § 419 trusts and purchased Indianapolis Life insurance policies. *Id.* at ¶¶ 46-59, 67. These representations were false and misleading regarding the nature of the policy benefits and federal tax consequences of the § 419 Plan, leading to IRS audits of the Plaintiffs, substantial tax penalties and interest, and ultimately damages in excess of $1,000,000. *Id.* at ¶¶ 62, 76-77.

## II.

## PROCEDURAL HISTORY

Plaintiffs' original complaint was filed on April 22, 2009 in Washington state court, and Aviva filed its notice of removal on May 29, 2009, removing the case to the United States District

---

[4] Burns is not a defendant to this suit, though Plaintiffs make several claims regarding his alleged malfeasance in connection with his work as an Indianapolis Life agent marketing the § 419 plan and Indianapolis Life's knowledge of this malfeasance.

Court for the Eastern District of Washington. Plaintiffs filed their Second Amended Complaint on September 14, 2009 after the trial court granted Plaintiffs' Motion to Amend and denied Aviva's Motion to Dismiss as moot with leave to refile on September 9, 2009. On December 3, 2009, the United States Panel on Multidistrict Litigation ("MDL Panel") ordered the case transferred to the Northern District of Texas. Aviva then filed its Motion to Dismiss Plaintiffs' Second Amended Complaint on February 5, 2010. On March 3, 2011, Plaintiffs filed their Request for the Court to Issue a Suggestion of Remand to the Judicial Panel of Multidistrict Litigation. The Motion and Request are now ripe for disposition.

## III.

## LEGAL STANDARD

### A.    *Law Applicable in MDL Cases*

This action is before the Court as a result of a forum transfer by the MDL Panel. Therefore, as to matters of state law, the Court is bound to apply the state law of the transferor forum. 15 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Fed. Practice and Procedure* ("Wright & Miller") § 3866 (3d ed. 2004) at 528-29 (2007) (citing *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)) (other citations omitted). As to matters of federal law, however, the Court applies the law of the transferee court. *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)) (other citations omitted). Therefore, as this case was originally filed in Washington state court (prior to removal and transfer), the Court applies Washington state substantive law as to matters of state law. On the other hand, because pleading requirements are purely matters of federal law, the Court looks to the law of this Court and this Circuit for the controlling Federal Rules of

Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and 9(b) ("Rule 9(b)") standards. *See, e.g., Prudential Ins. Co. of Amer. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008) (explaining that, as an initial matter, pleading requirements in federal courts are governed by the federal rules and not by state law).

B.      *Suggestion of Remand*

Although the power to remand a case to the transferor court lies solely with the MDL Panel, *In re Bridgestone/Firestone, Inc., ATX, ATX II, and Wilderness Tires Prods. Liab. Litig.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001) (citing 28 U.S.C. § 1407(a)), the transferee court may issue a suggestion of remand, which is given great weight by the Panel. *In re Managed Care Litig.*, 416 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006) (citation omitted). The Panel will remand an action prior to the completion of pretrial proceedings "only upon a showing of good cause." *In re CBS Color Tube Patent Litig.*, 342 F. Supp. 1403, 1405 (J.P.M.L. 1972). Further, the party seeking remand has the burden of establishing that such remand is warranted. *In re Nat'l Century Fin. Enters. Fin. Inv. Litig.*, 2004 WL 882456, at *2 (S.D. Ohio Nov. 18, 2003) (citation omitted). When deciding whether to issue a suggestion of remand to the MDL Panel, "a transferee court is guided by the standards for remand the Panel uses." *In re Express Scripts, Inc., PBM Litig.*, 2010 WL 5149270, at *1 (E.D. Mo. Dec. 13, 2010). "The exercise of that discretion generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d at 1197. "Remand is inappropriate . . . when continued consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 668 (S.D. Tex. 2005) (citation omitted).

C.     *Rule 9(b) Standard*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See, e.g., Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citation omitted); *see also Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

D.     *Rule 12(b)(6) Standard*

In analyzing a motion under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The motion should be granted only if the complaint does not include enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be "nudged . . . across the line from conceivable to plausible." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *SW Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

# IV.

# ANALYSIS

A.    *Request for Remand*

Plaintiffs' arguments in support of their "request" for a suggestion of remand do not convince the Court that remand is appropriate at this time, given the findings of the MDL Panel in its Order issued December 3, 2009. Transfer Order Dec. 3, 2009. There, the Panel found:

> After considering all argument of counsel, we find that this action involves common questions of fact with actions in this litigation previously transferred to the Northern District of Texas, notwithstanding any questions of fact unique to *Chau*. Transfer of the action for inclusion in MDL No. 1983 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. We further find that transfer of this action is appropriate for reasons that we set out in our previous orders directing centralization in this docket. In those orders, we held that the Northern District of Texas was a proper Section 1407 forum for actions involving claims relating to the design, marketing and sale of Indianapolis Life whole life insurance policies to fund § 412(i) and § 419 employee benefit plans.

*Id.* (citations omitted). Plaintiffs raise no new arguments that warrant disturbing the MDL Panel's findings, other than their lament that this case "has fallen into procedural purgatory," which the Court finds insufficient to justify remand. Such contention ignores the numerous substantive opinions issued by this Court in other cases transferred to the Court by the MDL Panel. *See* Def.'s Opp'n Pls.' Req. at 5 n.1 (listing this Court's rulings in other cases which are part of 08-md-1983,

*In re Indianapolis Life Insur. Co. IRS 412(i) & § 419 Plans Life Ins. Mktg. Litig.*). As such, Plaintiffs'

Request is **DENIED WITHOUT PREJUDICE**. Plaintiffs or Aviva may move for a suggestion of

remand at a later time should remand be appropriate based on further developments in this case.

B.   *Claims*

    i.    <u>Common Law Fraud/Negligent Misrepresentation</u>

Aviva claims that Plaintiffs' common law fraud/negligent misrepresentation claim ("fraud

claim") does not meet the heightened pleading requirements of Rule 9(b), under which a complaint

must allege the "who, what, when, where, and how" of the alleged fraud, as well as why the

statements or actions at issue were fraudulent. *See, e.g., Melder*, 27 F.3d at 1100 n.5. The Court

agrees. The complaint alleges Indianapolis Life's agent Burns met with each of the Plaintiffs on

specific dates, at specific locations, and "represented, promised, and explained . . . both orally and

in writing, that the Indianapolis Life policy would be an investment,"[5] "payments to the § 419 trust

were tax deductible," "investments and earnings could be realized tax-free," and "retirement income

would be available as tax-free cash flow."[6] *See, e.g.*, SAC ¶ 46 ("On April 27, 2000, and other times,

---

[5] Plaintiffs also argue that Indianapolis Life's representations were fraudulent because it marketed its insurance policies as investments. *See, e.g.*, Mot. Opp'n 13. Plaintiffs' arguments and allegations regarding marketing of the Indianapolis Life policies as investments are somewhat confusing. For example, Plaintiffs argue that Aviva should be subject to the Washington Securities Act because it was marketing an investment that did not fall under the insurance exemption to the Act. Elsewhere, Plaintiffs argue that Aviva should be subject to fraud claims because it allegedly marketed its policies as investments in violation of Washington state law. Regardless of the proper characterization of what Indianapolis Life was selling, the Court finds that the gravamen of Plaintiffs' fraud claim and its claims grounded in fraud is that Indianapolis Life represented that the § 419 Plan and the related insurance policies would provide certain tax benefits but the benefits did not materialize, the tax scheme was illegal, and Indianapolis Life knew the scheme was illegal and would not work.

[6] The Second Amended Complaint states "[b]oth before creation of the Plaintiffs' respective welfare benefit plans and thereafter, Indianapolis Life committed fraud upon the Plaintiffs by inducing their reliance upon the misrepresentations," "Guess and Indianapolis Life actively concealed the problems with the Indianapolis Life products by presenting the insurance policies as viable investment mechanisms to accumulate

Mr. Burns met with Ehlers at Ehlers' office in Yakima County, Washington."). Accordingly, the complaint properly alleges the "who," "what," "when," "where," and "how" of the alleged fraud. However, it does not properly allege *why* the alleged misrepresentations were false when made. The complaint states "[a]s early as 1989 (Notice 89-25), insurance companies were notified that policies structured as the Indianapolis Life policy for the [§] 419 trust would not be valued at the artificially low value advertised and marketed by Indianapolis Life" and "[a]gain in 1995,[7] the IRS advised tax and insurance professionals that such attempts at tax avoidance were illegal and would not work," and Indianapolis Life knew or should have known its tax scheme would not work. SAC ¶¶ 40-41. However, in a related case this Court found Notice 89-25 did not constitute definitive guidance regarding the legality of similar § 412(i) plans. *Berry v. Indianapolis Life Ins. Co.*, 638 F. Supp. 2d 732, 738 (N.D. Tex. 2009) ("*Berry II*") (citing I.R.S. Notice 89-25, 1989-1 C.B. 662, 1989 WL 561238 (Mar. 28, 1999) (reserve value may be more appropriate approximation of insurance contract's fair market value in certain circumstances). The Court finds that such reasoning is equally applicable to the § 419 Plan at issue in this case. IRS Notice 89-25 fails to provide the definitive guidance about the validity and tax consequences of the § 419 Plan and insurance policies in this case to support the proposition that Indianapolis Life or its agents knew that their representations were false when made in the period from 1998 to 2001. Notice 95-34 also fails to provide definitive guidance that would render the § 419 Plans illegal at the time they were established or convey knowledge of the

---

substantial tax-advantaged retirement savings," and "Indianapolis Life knew, or in the exercise of reasonable care should have known, of the potential adverse tax consequences; and not only negligently failed to tell Plaintiffs, but carelessly reassured Plaintiffs at all times that their contributions to the [§] 419 Plan would be tax deductible if Plaintiffs agreed to participate and let Indianapolis Life handle everything." SAC ¶ 78-79.

[7] Although not specified in the Second Amended Complaint, Plaintiffs clarify that the 1995 IRS guidance refers to IRS Notice 95-34. Mot. Opp'n 13.

§ 419 Plans' illegality when Indianapolis Life's representations were made in 1998-2001. *See* I.R.S. Notice 95-34, 1995-1 C.B. 309, 1995 WL 300780 (June 5, 1995) (discussing "some of the significant tax problems that *may* be raised by § 419 arrangements" and explaining "*[i]n general*, these arrangements and other similar arrangements do not satisfy the requirements of the section 419A(f)(6) exemption and do not provide the tax deductions claimed by their promoters") (emphasis added).[8] Although the allegations in the Second Amended Complaint may establish for the purposes of the Motion to Dismiss that Indianapolis Life knew of these notices, such allegations do not sufficiently allege that Indianapolis Life's statements regarding the benefits and legality of the § 419 Plan at issue in this complaint were false when made. As such, Plaintiffs' fraud/misrepresentation claim is **DISMISSED** for failure to meet Rule 9(b)'s heightened pleading standard.[9]

Aviva also argues that the amended complaint does not properly allege the elements of fraud. The Court agrees and finds that the fraud claim must be dismissed under Rule 12(b)(6). Under Washington law, the elements of fraud are:

---

[8] It appears that confusion regarding § 419 plans led the IRS to issue further guidance through its final regulation at 68 Fed. Reg. 42,254 (July 17, 2003).

[9] Even if Plaintiffs had alleged negligent misrepresentation as a separate count from common law fraud, such claim must be dismissed under Rule 9(b). As the Fifth Circuit has explained, "when the parties have not urged a separate focus on the negligent misrepresentation claims," these claims are subject to Rule 9(b) in the same manner as fraud claims. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, 2005 WL 1421446, at *5-*6 (N.D. Tex. Jun. 1, 2005) (dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule 9(b)). Plaintiffs have not urged a separate focus on the negligent misrepresentation claim but have effectively pled negligent misrepresentation as a lesser-included offense to their fraud claim, and it is therefore similarly subject to the pleading requirements of Rule 9(b).

> (1) [R]epresentation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's
> knowledge of its falsity; (5) the intent of the speaker that is should be acted upon by
> the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth
> of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by
> the plaintiff.

*Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1265 n.13 (W.D. Wash. 2009) (quoting

*Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996)). The Court has already found that the amended

complaint does not sufficiently allege that the representations made by Indianapolis Life were false

when made. Accordingly, the complaint does not properly allege that Indianapolis Life's

representations concerned an existing fact, nor does it properly allege falsity or Indianapolis Life's

knowledge of the falsity of its statements. *See Shook v. Scott*, 353 P.2d 431, 434 (Wash. 1960)

("Where the fulfillment or satisfaction of the thing represented depends upon a promised

performance of a future act, or upon the occurrence of a future event, or upon particular future use,

or future requirements of the representee, then the representation is not of an existing fact.")

(citation omitted). In light of this finding, the complaint's allegations lead to the conclusion that

Indianapolis Life and its agent were giving opinions or predictions regarding future tax treatment and

enforcement by the IRS.[10] Further, this Court stated in a related case that "it is inherently

unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-

enforcement of the law by someone unaffiliated with the federal government. As such, the

reasonable reliance element of any fraud claim based on these predictions fails as a matter of law."

*Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 820 n.19 (N.D. Tex. 2009) (*"Berry I"*); *see also*

*Berry II*, 638 F. Supp 2d at 739; *Williams v. Sidley, Austin, Brown & Wood, LLP*, 816 N.Y.S.2d 702

---

[10] Such nonactionable opinions or predictions include statements regarding the possible risk that the § 419 Plan would be disallowed by the IRS.

(Table), 2006 WL 684599, at *5 (N.Y. Sup. Ct. Sept. 22, 2006), *aff'd*, 832 N.Y.S.2d 9 (N.Y. App. 2007) ("The alleged misrepresentations regarding the purported safety and viability of the Coastal III Fund as a tax sheltered investment fall within the category of predictions or expressions of future events, which are neither affirmations of events that when made, the defendants knew would not occur, nor assertions of present facts that were exclusively within the defendants' knowledge.") (citations omitted). Plaintiffs have not alleged that Indianapolis Life or its agents had any special knowledge or ability to control future IRS enactment or enforcement such that the Plaintiffs could have reasonably relied on Indianapolis Life's representations. As such, the reliance element of Plaintiffs' fraud claim also cannot be satisfied. Plaintiffs' common law fraud/negligent misrepresentation claim is therefore **DISMISSED** pursuant to Rule 12(b)(6) for failure to adequately plead the elements of fraud.[11]

ii.      Breach of Contract

In support of its Motion to Dismiss, Aviva argues that Plaintiffs' breach of contract claim is subject to Rule 9(b) because it is predicated on the same misrepresentations and omissions regarding the § 419 Plan's tax consequences as Plaintiffs' fraud claim. The Ninth Circuit explained:

---

[11] Even if Plaintiffs had alleged negligent misrepresentation as a separate count from common law fraud, such claim must be dismissed under Rule 12(b)(6). Under Washington law, a negligent misrepresentation claim must be based on misrepresentation of an existing fact which was reasonably relied on by the plaintiffs. *See, e.g, Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP* , 40 P.3d 1206, 1219 (Wash. App. Ct. 2002)("A false representation as to a presently existing fact is a prerequisite to a misrepresentation claim.") (citing, *inter alia, Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 447 (1994)); *see also id.* (quoting RESTATEMENT (SECOND) OF TORTS § 552(1) (1977)) ("One who . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."). As previously explained, the alleged misrepresentations here concerned predictions or opinions of future IRS enforcement, rather than an existing fact, and were not reasonably relied upon by the Plaintiffs.

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiffs may allege a unified course of fraudulent conduct and rely entirely on that unified course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003) (citing, *inter alia*, Melder, 27 F.3d at 1100 n.6) ("When 1933 Securities Act claims are grounded in fraud rather than negligence as they clearly are here, Rule 9(b) applies."). However, a review of Fifth Circuit law indicates that applying Rule 9(b) to a breach of contract claim is generally inappropriate. For example, in *Flores v. ASI Computer Technologies, Inc.*, 2007 WL 2900567 (S.D. Tex. Sept. 28, 2007), plaintiffs brought multiple claims, including fraud and breach of contract. While applying Rule 9(b) to the fraud claim, the court declined to apply Rule 9(b) to the breach of contract claim even though plaintiffs alleged that the breach was based on "a false and misleading list of excuses." *Id.* at *4. *See also Hannover Life Reassurance Co. of Am. v. Baker, Lowe, Fox Ins. Mktg., Inc.*, 2001 WL 1586874, at *3-*5, *6-*7 (N.D. Tex. Dec. 10, 2001) (analyzing fraud claim under Rule 9(b) and breach of contract claim under Rule 12(b)(6) even though it was alleged that the transaction was entered because of various misrepresentations). Further, while the complaint alleges various fraudulent representations, Plaintiffs' contract claim is not based on these representations but rather Indianapolis Life's failure to provide the promised tax benefits, such that the contract claim is not grounded in fraud and Rule 9(b) is inapplicable to this claim. As such, Aviva's Motion to Dismiss Plaintiffs' breach of contract claim under Rule 9(b) is **DENIED**.

Aviva also argues that Plaintiffs' breach of contract claim must be dismissed under Rule 12(b)(6) because Plaintiffs did not identify any contracts between Indianapolis Life and the Trust

or specify any contractual provision allegedly breached. In response, Plaintiffs argue that Xelan Welfare Benefit Trust and Indianapolis entered "express insurance contracts on the Plaintiffs' lives with the promise of substantial tax savings and that the insurance policies were suitable for § 419 Plans" and "Indianapolis Life breached the contracts by failing to deliver the intended benefits." Mot. Opp'n 5 (citing SAC ¶¶ 36-39, 42-43, 81-82). Plaintiffs also argue that Indianapolis Life's agent, Aaron Burns, "orally contracted directly with the Plaintiffs to provide them with specific tax savings and suitable policies through which the Plaintiffs could fund their § 419 plans" and "Indianapolis Life breached the oral contracts it procured through Aaron Burns when it failed to deliver the promised tax savings to the Plaintiffs or provide a valid funding mechanism for the Plaintiffs' § 419 plans. *Id.* at 5-6 (citing SAC ¶¶ 46-59, 76-77). Finally, Plaintiffs argue that "Indianapolis Life promised the Xelan Trust that it would provide the Plaintiffs tax[-]free earnings if the Plaintiffs funded § 419 plans with Indianapolis Life insurance policies and that the policies were suitable for the plans," Indianapolis Life breached these promises, and Xelan Trust's claims for breach were assigned to the Plaintiffs.[12] *Id.* at 6 (citing SAC ¶¶ 75, 83).

Upon examination of Plaintiffs' Second Amended Complaint, the Court finds that Plaintiffs have sufficiently pleaded a claim for breach of contract. A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant. *See, e.g., Nw. Indep. Forest Mfgs. v. Dept. of Labor & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citation omitted). Plaintiffs allege that Indianapolis Life and its agent Aaron Burns made oral representations that the insurance policies would provide substantial tax savings or tax-free earnings

---

[12] Aviva does not challenge Plaintiffs' assertion that Xelan Trust's claims for breach were assigned to the Plaintiffs.

14

and that they were suitable for § 419 Plans. Further, Plaintiffs allege that the promised tax benefits were false, resulting in "substantial tax penalties and interest" after the IRS audited the Plaintiffs. SAC ¶ 76. Such allegations, accepted as true, state a claim for breach of contract under Washington state law. Accordingly, Aviva's Motion to Dismiss Plaintiffs' breach of contract claim under Rule 12(b)(6) is **DENIED**.

    iii. <u>Washington Securities Fraud</u>

In response to Plaintiffs' claim of securities fraud under Washington state law, Aviva argues that such claim is subject to Rule 9(b)'s heightened pleading standing. The Court agrees, as Plaintiffs' securities claim is based on Indianapolis Life's alleged fraudulent behavior. Plaintiffs' Washington securities fraud claim states that "[b]oth Indianapolis Life and its agent, Guess, actively employed a *scheme to defraud* the Plaintiffs through the advertising, marketing, and sale of the Indianapolis Life policies/securities," and "*made false statements* concerning material facts about the tax benefits of the Indianapolis Life policies/securities, as well as the use of those policies/securities to fund the Xelan Welfare Benefit Trust Plan." SAC ¶ 86 (emphasis added). Given that the Court has already found that the amended complaint did not sufficiently allege fraud, specifically why Indianapolis Life's statements were false when made, the Washington securities fraud is **DISMISSED** pursuant to Rule 9(b).

Aviva also argues that the Washington securities fraud claim must be dismissed pursuant to Rule 12(b)(6) because insurance policies are expressly excluded from the definition of "security" under the Washington Securities Act.[13] Revised Code of Washington ("RCW") 21.20.010 prohibits

---

[13] Aviva also argues that even if this exemption was inapplicable, Plaintiffs fail to show how these life insurance policies would qualify as securities.

fraudulent or misleading conduct in connection with the offer, sale, or purchase of any security. However, RCW § 21.20.005(12)(b) states:

> "Security" does not include: (i) *Any insurance . . . policy* or annuity contract under which an insurance company promises to pay a fixed sum of money either in a lump sum or periodically for life or some other specified period; or (ii) an interest in a contributory or noncontributory pension or welfare plan subject to the Employee Retirement Income Security Act of 1975.[14]

While Plaintiffs repeatedly characterize the insurance policies at issue as "investment contracts," and explain "Indianapolis Life violated the Securities Act of Washington when it marketed its life insurance policies in violation of Washington insurance law," *see*, *e.g.*, Mot. Opp'n 21, Plaintiffs do not state how the policy, by offering possible tax benefits as well as "cash flow for retirement, estate liquidity, and other purposes" transforms the insurance policies into investment contracts subject to the Washington Securities Act. Further, Plaintiffs state that "Indianapolis Life *waived* the protection provided by RCW 21.20.010 and 21.20.005(12)(a)" (emphasis in original), but as Aviva

---

[14] Such definition must be read in combination with the statute's definition of a security:

"Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; investment of money or other consideration in the risk capital of a venture with the expectation of some valuable benefit to the investor where the investor does not receive the right to exercise practical and actual control over the managerial decisions of the venture; voting-trust certificate; certificate of deposit for a security; fractional undivided interest in an oil, gas, or mineral lease or in payments out of production under a lease, right, or royalty; charitable gift annuity; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities, including any interest therein or based on the value thereof; or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any security under this subsection. This subsection applies whether or not the security is evidenced by a written document.

Wᴀsʜ. Rᴇᴠ. Cᴏᴅᴇ § 21.20.005(12)(a).

correctly points out, Plaintiffs cite no authority that would support such proposition.[15] Plaintiffs'

interpretation of the Washington Securities Act would seemingly make every whole life insurance

policy subject to the Act and render the exemption for insurance policies a nullity with respect to

a large number of insurance contracts sold in Washington State. Given that insurance policies are

excluded from the definition of a security under Washington state law, Plaintiffs' Washington

securities fraud claim is **DISMISSED** under Rule 12(b)(6).

### iii. Breach of Duty of Good Faith

Aviva argues that the breach of duty of good faith claim is grounded in fraud and must be

dismissed under Rule 9(b). The Court agrees. Plaintiff's breach of duty of good faith claim states that

"Washington common law and Washington insurance law impose a duty of good faith between the

insurer and the insured," and "Indianapolis Life and its agents' breach of insurance law, self-dealing,

and *fraudulent and/or negligent conduct* mentioned above breached this duty." SAC ¶¶ 88-89 (emhasis

added). Given Plaintiffs' averment of fraud in connection with this claim, the Court finds that the

breach of duty of good faith claim is premised upon and grounded in Indianapolis Life's alleged

fraudulent representations. Given that the Court has already found that the complaint did not

sufficiently allege why Indianapolis Life's statements were false when made, Plaintiffs' breach of duty

---

[15] Plaintiffs allege that marketing an insurance policy as an investment violates Washington Administrative Code ("WAC") § 284-23-040(3) and makes the policy issuer subject to the Washington Securities Act. WAC § 284-23-040(3) does not in fact prohibit marketing life insurance as an investment or marketing that touts the policy's non-insurance benefits such as cash flow for retirement *unless* it has the capacity to mislead a "purchaser or prospective purchaser of such policy to believe that he will receive, or that it is possible that he will receive, something other than a policy or some benefit not available to other persons of the same class and equal expectation of life." WASH. ADMIN. CODE § 284-23-040(3). Further, it is not clear how, assuming Indianapolis Life's advertising violated this section, such violation would transform the policies at issue into securities subject to the Washington Securities Act.

of good faith claim is **DISMISSED** pursuant to Rule 9(b).[16]

### iv. Unjust Enrichment

Aviva argues that the unjust enrichment claim is grounded in fraud and must be dismissed under Rule 9(b). The Court agrees. Plaintiffs' unjust enrichment claim states that "Indianapolis Life, by and through the misrepresentations, omissions, and other actions described above, obtained significant monetary remuneration in the form of premiums and commissions from marketing and selling the Indianapolis Life policies to the detriment of Plaintiffs. Indianapolis Life has therefore been unjustly enriched." SAC ¶ 92. The Court finds that because this claim is based on the same alleged misrepresentations and omissions underlying Plaintiffs' common law fraud/negligent misrepresentation claim, it is grounded in fraud and subject to Rule 9(b). Given that the Court has already found that Plaintiffs did not sufficiently allege why Indianapolis Life's representations were false when made, Plaintiffs' unjust enrichment claim is **DISMISSED** under Rule 9(b).

Aviva also argues that Plaintiffs' unjust enrichment claim must be dismissed under Rule 12(b)(6) given the existence of an express contract between the two parties. Plaintiffs assert in their complaint the existence of an express contract but argue that in the alternative of their breach of contract claim, they may assert an unjust enrichment claim based on the unenforceability of the contract as "Indianapolis Life knew or should have known that the tax avoidance aspects of the policies it marketed and sold to the Plaintiffs to fund their § 419 plans were invalid." Mot. Opp'n 19 (citing SAC ¶¶ 41, 92). Under Rule 8(d)(2) of the Federal Rules of Civil Procedure a plaintiff is allowed to plead in the alternative, and an unjust enrichment claim may survive a motion to dismiss

---

[16] The Court declines to dismiss Plaintiffs' breach of duty of good faith claim pursuant to Rule 12(b)(6).

if the plaintiff challenges the validity of the contract. *Vernon*, 643 F. Supp. 2d at 1266-67 (citations omitted). Here, Plaintiffs plead in the alternative that no express contract governs the parties' relationship or that such contract is invalid. According, Aviva's Motion to Dismiss the unjust enrichment claim under Rule 12(b)(6) is **DENIED**.

> v.    Washington Consumer Protection Act

Aviva argues that Plaintiffs' Washington Consumer Protection Act ("WCPA") claim must be dismissed under Rule 9(b) for failure to plead fraud with particularity. The WCPA prohibits acts or practices that have the *capacity to deceive* and lacks a fraud element. *See Hangman*, 719 P.2d at 535 (in private WCPA action, "[a] plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public") (emphasis in original). However, Plaintiffs' WCPA claim is based on the same misrepresentations and omissions which form the basis of Plaintiffs' common law fraud claim, such that the WCPA claim is grounded in fraud. *See* SAC ¶ 95. Given that the Court has already found that the Second Amended Complaint does not sufficiently allege why Indianapolis Life's statements were false when made, the WCPA claim is **DISMISSED** pursuant to Rule 9(b).

Aviva also argues that Plaintiffs' claims under Section 19.86 of the WCPA must be dismissed under Rule 12(b)(6) because the conduct alleged "lacks the capacity to deceive a substantial portion of the public" and also does not affect the public interest, citing to *Swartz v. KPMG, LLC*, 401 F. Supp. 2d, 1146, 1153 (W.D. Wash. 2004). Mot. 22.[17] In *Swartz*, the plaintiff realized $18 million in

---

[17] Under the WCPA, a private litigant must allege 1) an unfair or deceptive act or practice, 2) occurring in trade or commerce, 3) a public interest impact, 4) injury to the plaintiff's business or property, and 5) causation. *Little Donkey Enters. Wash. Inc. v. US Bancorp*, 136 Fed. Appx. 91, 93 (9th Cir. 2005) (citing *Sing v. John L. Scott, Inc.*, 948 P.2d 816, 819 (Wash. 1997)).

profits from the sale of a business and sought to diminish his tax liability from his capital gains. His

accountants recommended a particular tax strategy that was later disallowed by the IRS. The court

dismissed the plaintiff's WCPA claim against his accountants, explaining:

> The number of consumers who could conceivably find themselves in plaintiff's circumstances – looking for a tax savings on millions of dollars of capital gains – is extremely small and unable to qualify as a 'substantial portion of the public' under any reasonable definition of that term. As a matter of law, conduct directed toward a small group cannot support a CPA claim.

*Swartz*, 401 F. Supp. 2d at 1153-54. The court also found that the plaintiff could not establish that

the defendants' conduct affected the public interest, as "[t]he tribulations of multimillionaires are

not the focus of the legislative intent behind the CPA; as a (very small) group, the extremely wealthy

are neither unsophisticated nor easily subject to chicanery." *Id.* at 1154 (citation omitted).

The Court finds that facts in *Swartz* are distinguishable from the instant case. While high-

income professionals are certainly not a large percentage of the state population, the total number

of doctors and dentists in Washington, aside from other professionals who might be targets for

Indianapolis Life's alleged scheme, is likely in the hundreds or thousands, such that protection of

these professionals is in the public interest and Indianapolis Life's allegedly fraudulent practices

would in fact have a capacity to deceive a substantial portion of the public. Further, Washington has

expressly designated the business of insurance as "one affected by the public interest, requiring that

all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all

insurance matters." WASH. REV. CODE § 48.01.030.[18] Accordingly, Aviva's Motion to Dismiss, to

---

[18] Even if Washington had not specifically identified the business of insurance as one affecting the public interest, the Court finds that the defendants' alleged practices affect the public interest. As explained by one court in the context of private disputes such as those between an insurer and the insured:

> Whether the public has an interest in any given action is determined by reference to several

the extent it seeks dismissal of Plaintiffs' claims under the Washington Consumer Protection Act[19] under Rule 12(b)(6) is **DENIED.**

    vi.    <u>Civil Conspiracy</u>

Aviva argues that the civil conspiracy claim must be dismissed for failure to meet Rule 9(b)'s heightened pleading requirement. Aviva also argues that Plaintiffs' civil conspiracy claim must be dismissed under Rule 12(b)(6) for failure to state a claim for fraud, meaning that there is no underlying tort upon which the conspiracy claim may be based. The Court agrees. Plaintiffs' civil conspiracy claim asserts that "Donald Guess and Indianapolis Life agreed and combined to accomplish an unlawful purpose or combined to accomplish a purpose beyond lawful means by violating Washington law, negligently misrepresenting benefits, breaching duties to Plaintiffs and *perpetuating fraud* upon the Plaintiffs vis-à-vis the Indianapolis Life policies marketed and sold to the Plaintiffs." SAC ¶ 93 (emphasis added). The Court finds that this claim is grounded in fraud as

---

factors, depending upon the context in which the alleged acts were committed . . . . There must be a likelihood additional persons have been or will be injured in the same fashion. Relevant factors include: whether the acts were committed in the course of the defendant's business; whether the defendant advertised to the public; whether the defendant actively solicited the plaintiff, thereby indicating other similar solicitations took place; and whether the parties occupied unequal bargaining positions.

*Goodyear Tire & Rubber Co. v. Whiteman Tire*, 935 P.2d 628, 635 (Wash. Ct. App. 1997) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 537-38 (Wash. 1986)). Viewing these factors as a whole in this particular case, the Court finds that they weigh in favor of viewing the conduct at issue in this case as affecting the public interest, such that Plaintiffs have sufficiently alleged the public interest element of a WCPA claim.

[19] The Court expresses no opinion as to Plaintiffs' allegations that Indianapolis Life violated WAC § 284-23-040 and that such marketing constituted a *per se* unfair trade practice under the WCPA, other than its prior finding that this section does not prohibit the marketing of insurance policies as investments but rather the use of the term "investment" in such a way that has the capacity or tendency to mislead a purchaser "to believe that he will receive, or that it is possible that he will receive, something other than a policy or some benefit not available to other persons of the same class and equal expectation of life." *See* n. 14, *supra*.

Plaintiffs allege a unified course of fraudulent conduct and expressly allege fraud in connection with their civil conspiracy claim. The Court has already found that Plaintiffs fail to sufficiently allege fraud, and therefore Plaintiffs' civil conspiracy claim is **DISMISSED** pursuant to Rule 9(b). Further, given that the Court has already dismissed Plaintiffs' other claims with the exception of the contract claim, there is no underlying tort upon which their conspiracy claim may be based. *See Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 79 F. Supp. 2d 1219, 1229 (W.D. Wash. 1999) (citing *Nw. Laborers-Employers Health & Sec. Trust Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999)) (civil conspiracy claim fails if underlying act or claim is not actionable). Accordingly, Plaintiffs' conspiracy claim is also **DISMISSED** under Rule 12(b)(6).

## V.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Aviva's Motion to Dismiss Plaintiffs' Complaint. Aviva's Motion to Dismiss, to the extent it seeks dismissal of Plaintiffs' contract claim, is **DENIED**. Plaintiffs' common law fraud/negligent misrepresentation, Washington securities fraud, and civil conspiracy claims are **DISMISSED WITHOUT PREJUDICE** under Rule 9(b) and Rule 12(b)(6). Plaintiffs' breach of duty of good faith, unjust enrichment, and Washington Consumer Protection Act claims are **DISMISSED WITHOUT PREJUDICE** under Rule 9(b).

The Court does not take lightly dismissal of a claim without reaching its merits. Thus, a plaintiff will be given the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing

to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted.") (citation omitted).

If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than thirty (30) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, Aviva is hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed within ten (10) calendar days of the repleading. No further briefing will be permitted.

SO ORDERED.

DATED: May 20, 2011.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE