UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WING C. CHAU, M.D., et al.,　　　　　§
　　　　　　　　　　　　　　　　　　§
　　Plaintiffs,　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. 3:09-CV-2305-B
　　　　　　　　　　　　　　　　　　§
AVIVA LIFE AND ANNUITY　　　　　　§
COMPANY,　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§
　　Defendant.　　　　　　　　　　　§

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Aviva Life and Annuity Company's ("Aviva") Motion for Summary Judgment filed August 24, 2012 (doc. 97). For the reasons listed below, Aviva's Motion is **GRANTED**. Plaintiffs' breach of contract claim and Plaintiffs' Third Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

## I.

## BACKGROUND[1]

Plaintiffs[2] in this lawsuit are physicians and dentists and their professional corporations, all

---

[1] The background facts are derived from Plaintiffs' Third Amended Complaint ("TAC") filed June 20, 2011.

[2] Plaintiffs are Wing C. Chau, M.D.; Juliana Chau; Tri-Cities Physical Medicine & Rehabilitation, PC; Richard E. Ehlers, M.D.; Richard E. Ehlers, M.D., P.C.; Mark T. Chen, D.O.; Mark T. Chen D.O., P.C.; Craig Feeney, M.D.; Columbia Basin Imaging, P.C.; Henry H. Chou, M.D.; Henry H. Chou, M.D., P.C.; David R. Brown, D.D.S.; David R. Brown, D.D.S., P.L.L.C; David Russsell Brown, D.D.S., P.C.; William K. Trzcinksi, M.D.; William K. Trzcinski, M.D., P.S.; Donald G. Dicken, M.D.; Donald G. Dicken, M.D., P.C.; David L. Dickerman, M.D.; David L. Dickerman, L.L.C.; David L. Dickerman, PLLC; Walter J. Hales, M.D.; Walter J. Hales, M.D., P.S., Inc.; Patrick R. Harrison, D.D.S.; Patrick R. Harrison, D.D.S., P.C.; Steven J. Kincaid, M.D.; Steven J. Kincaid, M.D., P.C.; Douglas K. Murdock, D.P.M.; Douglas K. Murdock, D.P.M., PS; Charles Sung, M.D.; and Charles Sung, M.D., P.C..

of whom are citizens of the State of Washington. TAC ¶¶ 1-31. Plaintiffs allege that Indianapolis Life Insurance Company ("Indianapolis Life")[3] advertised, marketed, and consummated fraudulent business transactions, resulting in Plaintiffs' damages. *Id.* at ¶ 33. In the late 1990s, Indianapolis Life and Donald Guess allegedly created a "tax-sheltered investment to be offered to high-income professionals through a welfare benefit trust." *Id.* at ¶¶ 36-37. The trust, known as a "§ 419 Plan," because it was governed by Internal Revenue Code section 419, was designed to market an Indianapolis Life insurance policy as an investment, purportedly "promising the investor a valuable benefit of tax-favored retirement funds from tax-free cash flow where the investor did not contract or participate in management decisions." *Id.* The policy had "artificially high initial surrender charges which suppressed the cash value of the policy for the initial policy period." *Id.* at ¶ 39. The investor would then purchase the policy at a discount from the trust, shortly before surrender charges were to be reduced and while the cash value of the policy was low, and then the value would "spring" to a higher level. *Id.* The purchaser could then borrow from his policy for tax-free cash flow. *Id.* However, Indianapolis Life allegedly knew that the IRS had looked askance at the legality of similar arrangements and had indicated that these arrangements may be deemed abusive tax shelters, yet it continued to market its § 419 Plan as a tax-avoidance plan. *Id.* at ¶¶ 40-41.

In 1998, Aaron Burns ("Burns"), an agent of Indianapolis Life, began marketing and selling Indianapolis Life policies to fund § 419 Plans in eastern Washington. *Id.* at ¶ 42. Based on information he received from Indianapolis Life concerning the tax implications of these policies, Burns proceeded to meet with the various Plaintiffs from 1998 through 2001 multiple times, and

---

[3] Defendant Aviva is the successor to Indianapolis Life through various business transactions. TAC ¶ 32. The Court refers to Indianapolis Life and Aviva interchangeably.

represented, both orally and in writing, that their payments to the trust would be tax-deductible, their investment earnings would be tax–free, and they would enjoy tax-free cash flow which could be used for retirement income.[4] *Id.* at ¶¶ 44-59, Pls.' Resp. Mot. Summ. J. App. 3-5 (Burns Decl.); and App. 93-95 (Ehlers Decl.). Purportedly relying on these representations, Plaintiffs initiated their § 419 trusts and purchased Indianapolis Life insurance policies. TAC at ¶¶ 46-59, 67; Pls.' Resp. Mot. Summ. J. App. 94-95. In Plaintiffs' view, these alleged representations were false and misleading regarding the nature of the policy benefits and federal tax consequences of the § 419 Plan, leading to IRS audits of the Plaintiffs, substantial tax penalties and interest, and ultimately damages in excess of $1,000,000. TAC at ¶¶ 62, 76-77.

## II.

## PROCEDURAL HISTORY

Plaintiffs' original complaint was filed on April 22, 2009 in Washington state court, and Aviva filed its notice of removal on May 29, 2009, removing the case to the United States District Court for the Eastern District of Washington. Plaintiffs filed their Second Amended Complaint on September 14, 2009 after the trial court granted Plaintiffs' Motion to Amend and denied Aviva's Motion to Dismiss as moot with leave to refile on September 9, 2009. On December 3, 2009, the United States Panel on Multidistrict Litigation ("MDL Panel") ordered the case transferred to the Northern District of Texas.

---

[4]Burns is not a defendant to this suit, though Plaintiffs make several claims regarding his work as an Indianapolis Life agent marketing the § 419 plan on behalf of Indianapolis Life. Burns states that he is acting as an expert witness for Plaintiffs in this case. Pls.' Resp. Mot. Summ. J. App. 2.

On May 20, 2011, this Court issued a decision granting in part Aviva's motion to dismiss. Mem. Op. & Order May 20, 2011. The Court dismissed the Second Amended Complaint's ("SAC") claims for common law fraud/negligent misrepresentation, Washington securities fraud, breach of duty of good faith, unjust enrichment, civil conspiracy, and violation of the Washington Consumer Protection Act without prejudice and denied the motion to the extent it sought dismissal of Plaintiffs' breach of contract claim. The Court also gave Plaintiffs leave to amend with instructions to file, along with the amended complaint, a synopsis explaining how the amendments overcame the grounds stated for dismissal. On June 20, 2011, Plaintiffs filed their Third Amended Complaint ("TAC").  On July 25, 2011, the Court found that the Third Amended Complaint did not cure the deficiencies of the Second Amended Complaint as identified by the Court in its May 20, 2011 order. In light of the multiple opportunities afforded to Plaintiffs to state a claim, the Court determined that allowing further amendment would be futile and would cause needless delay and was therefore not warranted. Accordingly the Court dismissed with prejudice Plaintiffs' claims for common law fraud/negligent misrepresentation, Washington securities fraud, breach of duty of good faith, unjust enrichment, civil conspiracy, and violation of the Washington Consumer Protection Act. Accordingly, the sole claim remaining against Aviva is Plaintiffs' breach of contract claim, which Aviva seeks to dismiss through its Motion for Summary Judgment.

## III.

## LEGAL STANDARD

A.    *Law Applicable in MDL Cases*

This action is before the Court as a result of a forum transfer by the MDL Panel. Therefore, as to matters of state law, the Court is bound to apply the state law of the transferor forum. 15

Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* ("Wright & Miller") § 3866 (3d ed. 2004) at 528-29 (citing *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)) (other citations omitted). As to matters of federal law, however, the Court applies the law of the transferee court. *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)) (other citations omitted). Therefore, as this case was originally filed in Washington state court (prior to removal and transfer), the Court applies Washington state substantive law as to matters of state law. On the other hand, because pleading requirements are purely matters of federal law, the Court looks to the law of this Court and this Circuit for the controlling Federal Rules of Civil Procedure standards. *See, e.g.*, *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008) (explaining that, as an initial matter, pleading requirements in federal courts are governed by the federal rules and not by state law).

B.      *Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

# IV.

# ANALYSIS

Plaintiffs' breach of contract claim alleges that Aviva "entered into contracts with the Xelan Welfare Benefit Trust and the Plaintiffs as third-party beneficiaries and as assigns of the Xelan Welfare Benefit Trust's rights regarding the performance of [Aviva] policies, which were to fund the Xelan Welfare Benefit Trust plans with tax deductible payments leading to substantial tax-advantaged retirement savings," and Aviva failed to fulfill its contractual obligations. TAC ¶ 81-82. *See also* TAC ¶ 37 (Aviva insurance policy "was designed, advertised, marketed and sold as an 'investment contract' promising the investor a valuable benefit of tax-favored retirement funds from tax-free cash flow"). Aviva argues that its insurance policies issued to Plaintiffs in fact made no such contractual promise, and "the policies do not promise any 'tax-favored' or 'tax-free' cash flow or identify any other tax benefits that Plaintiffs allege they were entitled to receive by purchasing the policies." Def.'s Br. Supp. Mot. Summ. J. 2. Further, Aviva argues that the insurance policies issued to Plaintiffs "are the fully integrated agreement between the parties." *Id.* at 4 (citing Martin Decl., Mot. Summ. J. Ex. 1).

In opposition to Aviva's Motion for Summary Judgment, Plaintiffs argue that Aviva's characterization of its insurance policies "ignores the other promises it made as part of its larger program to market and sell tax-free investments," Aviva "marketed and sold tax-free investments that included the insurance policy as the means to achieve the tax-free result, [and] neither the investment nor the policy met the promises" made by Aviva, and "[s]uch failure to perform as promised is a breach of contract." Pls.' Resp. Mot. Summ. J. 1-2. Plaintiffs also argue that the insurance policies they purchased were not the entire agreement between them and Aviva, despite

the policies' integration clauses, as shown by extrinsic evidence.

This Court previously denied Aviva's Motion to Dismiss to the extent that it sought dismissal of Plaintiffs' breach of contract claims based on Federal Rule of Civil Procedure 12(b)(6).[5] Mem. Op. May 20, 2011 at 15. The Court explained:

> A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant. Plaintiffs allege that Indianapolis Life and its agent Aaron Burns made oral representations that the insurance policies would provide substantial tax savings or tax-free earnings and that they were suitable for § 419 Plans. Further, Plaintiffs allege that the promised tax benefits were false, resulting in "substantial tax penalties and interest" after the IRS audited the Plaintiffs. Such allegations, accepted as true, state a claim for breach of contract under Washington state law.

*Id.* at 14-15 (citations omitted). At the time the Court made this determination, on a motion to dismiss, the Court expressed no opinion as to whether any oral representations or any written representations not contained in the insurance policies could form part of any contract between Aviva and the Plaintiffs. On Aviva's Motion for Summary Judgment, however, the Court now looks to the parties' evidence in determining what obligations and promises were made by the parties.

Under Washington law, to prevail on a breach of contract claim, a party must prove "(1) the existence of an enforceable contract, (2) the parties' obligations under the contract, (3) violation of the contract, and (4) damages proximately caused by the breach." *Major v. Hodgson*, No. 64858-6-I, 2010 WL 1746554, at *5 (Wash. Ct. App. May 3, 2010) (citation omitted). Aviva argues that the principal contractual promise of the policies at issue is to provide a guaranteed death benefit in exchange for annual premium payments, and such policies do not promise any tax advantages or

---

[5]The Court also denied the Motion to Dismiss to the extent it sought dismissal of the breach of contract claim based on Federal Rule of Civil Procedure 9(b), based on the Court's determination that applying Rule 9(b) to a breach of contract claim is generally inappropriate.

other tax benefits alleged by Plaintiffs. The Court agrees that the policies themselves do not promise any tax benefits. Indeed, the policies explain that "Indianapolis Life Insurance Company promises to pay the Death benefit to the beneficiary upon receipt at our Home Office of due proof of death of the Insured, subject to the terms and conditions of this policy." Def.'s Br. Supp. Mot. 7 (citing Mot. App. 5, 38, 65, 98, 124, 158, 188, 220, 254, 284, 326, 362, 393, 424). Further, the policies contain an integration clause stating that "[t]his policy and the application . . . make up the entire contract." Mot. 8 n.5 (citing Mot. App. 11, 44, 71, 130, 164, 194, 226, 260, 290, 332, 368, 399, 430). Assuming there are no valid contractual promises made outside of the insurance policies at issue, Plaintiffs fail to point to any term of the contracts between the parties which have been breached by Aviva.

Plaintiffs, however, argue that they are entitled to introduce evidence of promises outside of the insurance policies, in the form of Indianapolis Life marketing information, a declaration from Indianapolis Life's former agent Burns regarding promises of tax benefits, and other documents. In their view, such evidence creates, at a minimum, a fact issue as to whether there were contractual obligations between the parties outside of the insurance policies, specifically the alleged promised tax benefits. Aviva, however, argues that any such evidence is barred by the parol evidence rule, the policies' integration clause, and Washington state law regarding insurance contracts.

At first glance, Washington law appears more permissive of extrinsic evidence in the context of breach of contract claims than many other states. The Washington Supreme Court explained in *Berg v. Hudesman*, 801 P.2d 222 (Wash. 1990), that "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an in ascertaining the parties' intent." The court explained that it was adopting the Restatement (Second) of Contracts § 212, 214(c) (1981),

which states that "[a] question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence." *Id.* at 229. The court further explained that

> The parol evidence rule only applies to a writing intended by the parties as an "integration" of their agreement; *i.e.*, a writing intended as a final expression of the terms of the agreement. Where a contract is only partially integrated, *i.e.*, the writing is a final expression of those terms which it contains but not a complete expression of all terms agreed upon, the terms not included in the writing may be proved by extrinsic evidence provided that the additional terms are not inconsistent with the written terms.

*Id.* at 230 (citation omitted).

However, since the *Berg* decision, the Washington Supreme Court clarified when extrinsic evidence may be used in contract interpretation in *Hearst Communications, Inc. v. Seattle Times Co.*, 115 P.3d 262 (Wash. 2005). The *Hearst* court first noted the confusion over the implications of *Berg*, explaining "[i]nitially *Berg* was viewed by some as authorizing unrestricted use of extrinsic evidence in contract analysis, thus creating unpredictability in contract interpretation. *Id.* at 266 (citation omitted). The *Hearst* court explained that:

> Since *Berg*, we have explained that surrounding circumstances and other extrinsic evidence are to be used to determine the meaning of *specific words and terms* used and not to show an intention independent of the instrument or to vary, contradict or modify the written word. Our holding in *Berg* may have been misunderstood as it implicates the admission of parol and extrinsic evidence. We take this opportunity to acknowledge that Washington continues to follow the objective manifestation theory of contracts. Under this approach, we attempt to determine the parties' intention by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. We impute an intention corresponding to the reasonable meaning of the words used. Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used. We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. We do not interpret what was intended to be written but what was written.

*Hearst*, 115 P.3d at 267 (citations omitted). *See also Craig Wireless Sys. Ltd. v. Clearwire Legacy LLC*, No. C10-1269Z, 2011 WL 4011415, *6 (W.D. Wash. Sept. 9, 2011) (quoting *Hearst*).

Here, the extrinsic evidence sought to be introduced by Plaintiffs does not aid the Court in determining the meaning of specific words and terms used. Rather, the documents allegedly indicating promises of tax benefits made by Indianapolis Life would instead tend to show an intention independent of the insurance policies at issue.[6] *See Hearst*, 115 P.3d at 267. *See also Elliott Bay Seafoods, Inc. v. Port of Seattle*, 98 P.3d 491, 494 (Wash. Ct. App. 2004) ("*Berg* held that extrinsic evidence may be admitted to give meaning to the words used in the contract, not to create a new contract term."); *Seattle-First Nat'l Bank v. Crystal & Gold, Ltd.*, No. 37016-2-I, 1997 WL 206788, *3 (Wash. Ct. App. Apr. 28, 1997) ("[Extrinsic] evidence is admissible even where the written contract is not ambiguous. But [the *Berg* court] carefully noted that parol evidence may not be used to create obligations that have no basis in the written instrument."). The policies at issue make no mention of any tax benefits or tax deductions, including the tax benefits alleged by Plaintiffs. Instead, as shown by the clear terms of the policies, the objective intent of the parties was to provide a guaranteed death benefit in exchange for annual premium payments. Here, Plaintiffs seek to insert additional obligations into the insurance contracts at issue, which is an impermissible use of extrinsic evidence. *See Oliver v. Flow In't Corp.*, 155 P.3d 140, 143 (Wash. Ct. App. 2006) (extrinsic evidence is relevant only to determine the meaning of specific words and terms used and not to show an intention independent of the instrument or to vary, contradict, or modify the written contract,

---

[6] Further, such promises would also contradict the terms of the contract's integration clause. However, even assuming there was no integration clause, the alleged promises of tax benefits are essentially new contract terms inconsistent with the terms of the insurance policies, and therefore Plaintiffs' extrinsic evidence showing such purported obligations are inadmissible.

including by "insert[ing] new obligations") (citations omitted). Permitting the use of Plaintiffs' proposed extrinsic evidence here "would amount to a rewriting of the insurance certificate," which is contrary to "the duty of the court to declare the meaning of what is written, and not what was intended to be written," and would "emasculate the parties' written expression of mutual intent." *See Seattle-First*, 1997 WL 206788, at *3-4 (quoting *US Credit Life Ins. Co. v. Williams*, 919 P.2d 594 (Wash. 1996)). Given that the Court's examination of the insurance policies at issue reveals solely a promise of payment of a guaranteed death payment in exchange for annual premium payments, with no promises of tax benefits, and given that Plaintiffs' proposed extrinsic evidence would not aid the Court in determining the meaning of specific words and terms used, but would instead attempt to insert additional obligations into the parties' agreements, the Court holds that there is no dispute of material fact as to whether Aviva breached any terms of the contracts at issue.[7] Accordingly, Plaintiffs cannot prevail on their breach of contract claim, and the breach of contract claim is **DISMISSED WITH PREJUDICE**.[8]

## V.

## CONCLUSION

For the reasons listed above, Aviva's Motion for Summary Judgment is **GRANTED**. Plaintiffs' breach of contract claim is hereby **DISMISSED WITH PREJUDICE**. As the Court has

---

[7]The Court expresses no opinion as to whether Plaintiffs' proposed extrinsic evidence would be admissible to prove any of the other claims asserted by Plaintiffs in the Third Amended Complaint, as all of Plaintiffs' claims, with the exception of the breach of contract claim, were previously dismissed with prejudice by the Court for failure to meet the applicable pleading standards.

[8]The Court reaches this determination without expressing an opinion on the validity of the integration clause present in insurance policies at issue. The Court notes, however, that the integration clause tends to provide even more support for Aviva's contention that the only contractual promise it made to Plaintiffs was a guaranteed death benefit in exchange for annual premium payments.

now dismissed with prejudice all of Plaintiffs' claims, the Third Amended Complaint is hereby **DISMISSED WITH PREJUDICE**. The Court will issue its final judgment in a separate order.

SO ORDERED.

DATED: December 14, 2012.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE